(32 App. Div. 454.)

### MERRICK WATER CO. v. CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department. July 23, 1898.)

1 PERCOLATING WATER—DIVERSION.
   As between two corporations pumping water from their respective premises, not for use thereon, but for transportation and sale in other localities, one of them cannot complain of the diversion of percolating water from his own land by the acts of the other. Their rights in this respect are equal.
2. WATER COURSE—RIVULET—PERCOLATING WATER.
   A mere rivulet is to be classed, not with running streams, but with percolating water, in regard to the right of the owner to complain of its diversion by the owner of adjacent land.

Appeal from judgment on report of referee.

Action by the Merrick Water Company against the city of Brooklyn. From a judgment entered on the report of a referee, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Almet F. Jenks (Jerome W. Coombs, on brief), for appellant.
Franklin B. Lord, for respondent.

HATCH, J. The plaintiff is a corporation engaged in the business of collecting water, and selling the same to its various customers throughout the neighborhood where it has its principal place of business. The complaint avers that the land occupied by the plaintiff, and from which it obtains its water supply, is located on a subterranean stream supplied from a water shed which is particularly described; that such underground stream rises to the surface on the plaintiff's land, and flows into ponds owned by it. The complaint further avers that the defendant has acquired a considerable strip of land lying north of the plaintiff's pumping station and its wells, upon which land it intends to sink about 80 wells, and draw therefrom

a water supply for the city of Brooklyn, and that, if it carries out such purpose, it will draw the water from the plaintiff's wells and the underground stream, and also from the surface stream and said ponds, whereby the plaintiff will be deprived of its water, its business will be destroyed, and the locality in which it seeks to carry on its business will be checked in its growth. The complaint demands judgment that the defendant be restrained from sinking its wells or establishing a pumping station, or doing any other act upon its land which will diminish the flow of water upon the plaintiff's lands. At the time of the trial the defendant had sunk its wells, established its pumping stations, was engaged in operating the same, and was carrying the water thus obtained to the city of Brooklyn. The proof tended to establish, and the referee found, that the effect of the defendant's pumping had been to permanently lower the water in plaintiff's well from seven to eight feet; that such lowering was caused by the defendant's pumps in drawing the water from under the plaintiff's well and the land on which it is situated. The evidence failed in support of the averment that there existed a subterranean stream of water which supplied the plaintiff's well. Upon this subject the proof was that the interruption, by the act of the defendant, was of percolating water, and as a consequence the water in the well was diminished in quantity, as was the flow of the small surface stream running to the ponds, which was practically, if not entirely, dried up, and the quantity of water in the ponds diminished. The case therefore presents the question of the diversion of percolating water by one corporation from the lands of another corporation, both of which are engaged in the collection of water, not for use upon the land itself, but for purposes of transportation and sale to third persons, who have no interest or right of use of the water as connected with the land. The learned referee has adopted the doctrine of this court as laid down in Smith v. City of Brooklyn, 18 App. Div. 340, 46 N. Y. Supp. 141. That case presented the question of the relative right of the defendant and an adjoining landowner, who made use of his land, and the running stream and pond thereon, in connection with the land, and for the purposes of its beneficial enjoyment. And this court held that as the defendant collected the water upon its land, not for any purpose of beneficial enjoyment of the land itself, but for purposes of transportation and sale at a distant place to others, having no right to it as against the owner of the land, who was deprived of his stream and pond, it was an unlawful diversion of the water by the defendant, for which the plaintiff had his right of action. And we further held that, under the circumstances of that case, the act of the defendant diverted the water from a running stream in which the plaintiff had a property right, and that such diversion was unlawful. But, being mindful of the delicate nature of the question we were deciding, we expressly limited the rule to the particular case and its facts; announcing that no fixed rule could be laid down, but that each case must rest upon its particular facts, as applied to the doctrine of reasonable use and relative rights. The effect of that decision was to limit the right

to divert percolating water by an adjoining owner of land to cases where the diversion was produced by the exercise of a legal right to improve the land, or make some use of the same in connection with the enjoyment of the land itself, for purposes of domestic use, agriculture, or mining, or by structures for business carried on upon the premises, or other improvements, either public or private. We recognized the rule that no liability was created by such use of the land, even though the effect of it was to divert the percolating water from the land of the adjoining owners. This rule is firmly settled in the law of this state and elsewhere, as appears by the decisions cited upon page 342, 18 App. Div., and page 143, 46 N. Y. Supp., of the Smith Case, and is only qualified by the diversion of water from a running stream which has existed from time immemorial. As to it, the maxim, "Sic utere tuo ut alienum non lædas," is applicable, and, from the inherent difficulty resting in the nature of the rights of each party, can only be settled upon the facts out of which the controversy arises. It is therefore manifest that the decision in the Smith Case is not controlling of the present controversy. In the present case both corporations seek to obtain water in a similar manner, for a precisely similar purpose; i. e. for transportation and sale. Neither party intends to make use of its land for any other purpose than will facilitate the gathering and distribution of water. In this respect their rights are equal, one as great as the other; and we see no reason why the rule should not be applicable as would apply in case either owner desired to improve its land for purposes of use. Then, as we have seen, neither party would be liable for the diversion of percolating water, because each is engaged in the exercise of a legal right, and the rights of each are equal in the use and enjoyment of the land. When both seek to use their land for exactly the same purpose, and neither seeks to improve it for the purpose of beneficial enjoyment, but to make a profit from the business carried on, the right to such use must also be equal. Under such circumstances, if one gets more than the other we think there can be no more ground of complaint than would exist if both sought to improve their own land, and one secured more than the other, or one was damaged and the other not. As applied to such obligations, the doctrine of reasonable use and relative rights has never been adopted by any of the courts in this state, nor in any other state, so far as our research has discovered, except in New Hampshire. We are not able to see, therefore, that the act of the defendant has infringed upon any legal right which the plaintiff possessed. So far as the diversion of the small brook is concerned, we do not think that the facts warrant its separation from the rule applicable to percolating water. There was little proof to show that its source, character, or use was such as to make the rule of the Smith Case applicable. It is not every rivulet or small stream to which such rule can be applied, as it is evident, if such were the rule, then an adjoining owner might be unable to improve his property, or might improve, and find himself liable for exercising his legal right. The destruction must be unreasonable when the rights of both par-

ties are considered, and, as applied here, we think it was not sufficient to create a subject-matter of legal damage.

These views call for a reversal of the judgment.

Judgment reversed, and new trial granted before a new referee to be appointed at special term; costs to abide the event. All concur.