(60 Misc. Rep. 341.)

HATHORN et al. v. NATURAL CARBONIC GAS CO.

(Supreme Court, Special Term, Saratoga County. August, 1908.)

1. ACTION (§ 38*)—MISJOINDER.

A complaint by the owners of a mineral spring founded upon wrong-ful interference with their common-law property rights, as well as a vio-lation of Laws 1908, p. 1221, c. 429, for the protection of the natural min-eral springs of the state and the prevention of waste and impairment of its natural resources, is not multifarious, nor bad as for a misjoinder of causes of action.

[Ed. Note.—For other cases, see Action, Dec. Dig. § 38.*]

2. CONSTITUTIONAL LAW (§ 48*)—CONSTRUCTION IN FAVOR OF CONSTITUTION-ALITY.

Though it is the duty of a court at Special Term to declare unconsti-tutional a law which is clearly so, the question should be left to the ap-pellate courts, and the law given the benefit of the presumption of its constitutionality where there is reasonable doubt concerning it.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

3. MINES AND MINERALS (§ 47*)—REGULATION OF MINERAL SPRINGS—POLICE POWER.

Laws 1908, p. 1221, c. 429, for the protection of the natural mineral springs of the state, and the prevention of waste and impairment of its natural resources, is within the police power and a reasonable exercise thereof, notwithstanding it may destroy a citizen's business.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 47.*]

4. CONSTITUTIONAL LAW (§ 212*)—EQUAL PROTECTION OF THE LAW.

Laws 1908, p. 1221, c. 429, for the protection of the natural mineral springs of the state and the prevention of waste and impairment of its natural resources, does not deny the equal protection of the law because prohibiting pumping from wells bored in the rock, but not from wells bored in the earth.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 212.*]

5. MINES AND MINERALS (§ 52*) — MINERAL SPRINGS — EQUITABLE RELIEF AGAINST INTERFERENCE WITH RIGHTS—RIGHT TO.

The use by the owners of mineral springs of a hand pump to obtain water, or clear the spring, is not within Laws 1908, p. 1221, c. 429, for the protection of the natural mineral springs of the state and the pre-vention of waste and impairment of its natural resources, and does not deprive them of such right as they have under the statute to restrain pumping by others.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 52.*]

Action by Emily H. Hathorn and another against the Natural Car-bonic Gas Company. Motion for preliminary injunction. Motion granted. This case is modified and affirmed in 128 App. Div. 33, 112 N. Y. Supp. 374.

Rockwood, Scott & McKelvey (Charles C. Lester, of counsel), for plaintiffs.

Morris & Plante (Edgar T. Brackett and Edward W. Hatch, of counsel), for defendant.

HOUGHTON, J. The plaintiffs are owners of a mineral spring in the village of Saratoga Springs, of high medicinal reputation and large commercial value. The defendant owns a tract of land about

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

one mile distant, on which it has bored numerous wells into the rock from which it pumps mineral waters holding in solution natural mineral salts and an excess of carbonic acid gas. The gas is extracted for commercial purposes, and the water permitted to go to waste. The plaintiffs allege that this pumping accelerates the natural flow of the water and causes injury to their spring; and they bring this action, founding it upon wrongful interference with their common-law property rights as well as a violation of chapter 429, p. 1221, Laws 1908, and they ask a judgment restraining the defendant from the continuance of such act. This motion is for an injunction during the pendency of the action.

Chapter 429, p. 1221, Laws 1908, makes it unlawful for any person to pump, or by any artificial contrivance in any manner to accelerate, the natural flow of mineral waters holding in solution natural mineral salts and an excess of carbonic acid gas from any well made by boring or drilling into the rock, or to pump or accelerate the natural flow of natural carbonic acid gas issuing from any well so made by such boring, or to do any act whatsoever whereby the natural flow of any spring or well of that class of mineral waters is impeded, retarded, diminished, diverted, or endangered, or the quality of its waters is impaired, or the quantity of its carbonic acid gas or mineral ingredients diminished. A right of action to restrain such practice is given to any taxpaying citizen, or the Attorney General may bring such action in behalf of the people, at his discretion; and it is made his duty to bring it, upon the written request of a certain number of taxpayers, upon a proper statement of facts, and upon the giving of an indemnity for costs. The title of the act recites that it is an act for the protection of the natural mineral springs of the state, and to prevent waste and impairment of its natural mineral waters.

The defendant insists that no injunction should be granted because the complaint is subject to demurrer in that it does not state facts sufficient to constitute a cause of action, and also that there is a misjoinder of causes of action, one under the common law and one under the statute; and upon the further grounds that at common law the plaintiffs have no cause of action whatever, and that the statute giving one is unconstitutional, in that it deprives the defendant of its property without due compensation, and does not afford all persons engaged in pumping the equal protection of the law, because only pumping from wells bored into the rock is prohibited. It is also urged that the plaintiffs themselves have been or are engaged in pumping water from wells bored into the rock, and therefore cannot ask that defendant be stayed from doing the same thing. Of course, if the complaint does not state any cause of action, and, very possibly, if there be a misjoinder of causes of action, an injunction should not be granted. But I think the complaint does state a cause of action, and I do not think two causes of action are improperly joined. The action is in equity, and it is proper to state in the complaint all the facts upon which the plaintiffs seek relief. The statute is not a penal statute in any legal sense. No right of action is given by it to recover a penalty, and the action is not for that purpose. It simply de-

clares that certain acts shall be unlawful, and prescribes who may restrain their continuance. If the plaintiffs have any rights under the common law, or under the statute, it seems to me proper for them to allege in their complaint all the facts constituting a violation of those rights; and a statement of facts showing a violation of both the statute and their common-law rights does not render the complaint multifarious or lay it open to the objection that there is a misjoinder of causes of action. If the statute is good and facts are stated which show its violation, the allegation is not rendered bad by reason of facts being stated which seek to show a violation of plaintiffs' rights under the common law. The rule in equity pleadings is much more liberal than in actions at law, and various separate and distinct facts showing grievance and constituting a right of action may be alleged in the complaint without making it subject to the objection that more than one cause of action is stated. Young v. Equitable Life Assurance Society, 112 App. Div. 760, 98 N. Y. Supp. 1052. The technical objection, therefore, does not, to my mind, prevent the issuing of the injunction asked for. It is fair to assume, as a scientific fact upon which all scientists who have given the matter attention agree, that the various mineral springs at Saratoga Springs and vicinity come from a common source. The mineral deposits found in solution and which make springs of different character and therapeutic value are manifestly caused by water impregnated with gas being forced by the pressure of a large volume of carbonic acid gas through fissures in rock of different mineral character. Sometimes these springs come to the surface, but more often they are found by boring into the rock itself.

Whether or not at common law the owner of one spring, who makes a business of selling the water, has the right to enjoin another, who on his own land has tapped this common source of supply, from sucking away by pumps and artificial means the gas and water, also for the purpose of sale, I do not purpose to discuss on this motion. The law upon the subject as found in Smith v. City of Brooklyn, 160 N. Y. 357, 54 N. E. 787, 45 L. R. A. 664, Forbell v. City of New York, 164 N. Y. 522, 58 N. E. 644, 51 L. R. A. 695, 79 Am. St. Rep. 666, Merrick Water Co. v. City of Brooklyn, 32 App. Div. 454, 53 N. Y. Supp. 10, affirmed 160 N. Y. 657, 55 N. E. 1097, and Hathorn v. Strong's S. S. Sanitarium, 55 Misc. Rep. 445, 106 N. Y. Supp. 553, is so uncertain that I should not feel justified in granting a preliminary injunction, especially where the springs are so widely separated and direct proof of interference is so meagre. I have concluded, however, that chapter 429, p. 1221, Laws 1908, should be held to be constitutional, and I therefore determine that the plaintiffs are entitled to an injunction restraining the defendant from a violation of that law. While it is the duty of a court at Special Term to declare unconstitutional a law which is clearly so, the question should be left to the appellate courts and the law given the benefit of the presumption of its constitutionality where there is reasonable doubt concerning it.

Much can always be said upon both sides of the constitutionality of a law dependent upon the police power for its validity. The constitutionality or unconstitutionality of such a law depends upon whether or not the court which passes upon it deems it within that power reserved to the Legislature and a reasonable exercise of that prerogative. Necessarily, therefore, there is much divergence of opinion; and often it is quite difficult to reconcile the decisions on the subject. The act under consideration applies to the mineral springs of the whole state, but it particularly affects the mineral springs of Saratoga Springs and vicinity. Natural mineral water containing proper ingredients is commonly regarded as having great curative properties for many human ailments and of great aid in keeping the system in such condition as not to be susceptible to many diseases. No artificially prepared waters have the like effect. It is of great importance to the people of the state, therefore, that such natural health-giving waters should not be destroyed. Anything affecting the health of a large number of people of the state is within the province of the Legislature to make laws concerning. Concededly the Legislature can pass laws tending to check the spread of contagious diseases or the pollution of water supply. It would seem, also, within its province and a reasonable exercise of its power, to pass a law tending to preserve for the people at large the natural health-giving mineral waters of the state, and to provide that certain acts which in its judgment might be detrimental to them should be unlawful. There can be little difference in principle between a law designed to prevent a citizen from becoming ill and one designed to aid him in curing the disease from which he suffers. The one is as much a health law as the other.

It is true that the declaring that pumping is unlawful works a hardship on defendant and very probably destroys its business. Such is the effect, however, to a greater or less degree of almost every law restricting for the public good, the sale of certain articles deemed detrimental to the public health, or the carrying on in a certain way of any business injurious to or affecting the comfort of the community at large. Some individual always suffers inconvenience or loss from every health law that is enacted, and he is restrained of his liberty and curtailed in the exercise of his property rights by every police regulation which is made. Such curtailment of his liberty of action and regulation respecting his property is not, however, the taking of property without just compensation within the meaning of the Constitution. In Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, it was held a statute prohibiting the manufacture and sale of intoxicating liquors within the state of Kansas was constitutional, although it ruined a citizen's business and rendered his brewery of little value. The regulation of the sale of intoxicating liquors by the state is quite different from regulating the management of a mineral spring, but the Legislature has no right to interfere in either except under the police power. Whether it is a reasonable exercise of that power to so regulate the manner of pumping water from a mineral spring as to destroy the business of extracting natural carbonic acid gas for sale is a grave question, and the one which the appellate courts must ultimately de-

cide. I do not think the fact that the Legislature saw fit to prohibit pumping from wells bored in the rock and not to prohibit it from wells bored in the earth only, renders the act unconstitutional because it deprives people who pump of the equal protection of the law. When the Legislature passed the law, it was called upon to determine what was injurious to the natural mineral waters of the state and what would likely deprive the people of their health-giving properties. It determined that pumping from wells bored in the rock was injurious, and, inferentially, determined that pumping from wells bored in the earth did not affect the waters. This was not the picking out of a class of people who pump from wells bored in the rock and legislating concerning them. It was legislation concerning a thing deemed to be injurious. It was the injury to the natural mineral waters of the state that was legislated concerning and not persons who were engaged in a certain business or occupation. A violent example of what might be called class legislation is what is known as the Barber Sunday Law. Laws 1895, p. 649, c. 823.

The Court of Appeals in People v. Havnor, 149 N. Y. 195, 43 N. E. 541, 31 L. R. A. 689, 52 Am. St. Rep. 707, decided, however, that it was constitutional, notwithstanding the fact that the barbers of New York City and Saratoga Springs could work on Sunday until 1 o'clock, while all barbers in the state outside those two places must not do so on pain of committing a misdemeanor. The law was sustained on the ground that it was intended to promote the public health by compelling the observance of Sunday as a day of rest; and the fact that it excepted barbers doing business in New York City and Saratoga Springs did not render it unconstitutional, for it applied alike to all persons at which it was aimed. In the course of his opinion in that case, Vann, J., says:

"That amendment (the fourteenth amendment of the Constitution of the United States, guaranteeing equal protection of the law) does not relate to territorial arrangements made for different portions of a state, nor to legislation which, in carrying out a public purpose, is limited in its operation, but within the sphere of its operation affects alike all persons similarly situated. Missouri v. Lewis, 101 U. S. 22, 30, 25 L. Ed. 989; Barbier v. Connolly, 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. Ed. 923. It was not designed to interfere with the exercise of the police power by the state for the protection of health, or the preservation of morals. Powell v. Pennsylvania, 127 U. S. 678, 683, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253. The statute treats all barbers alike within the same localities, for none can work on Sunday outside of New York and Saratoga, but all may work in those places until a certain hour. All are therefore treated alike under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed."

While conceding that this case was on the border line, it has been cited with approval in various opinions by the Court of Appeals, and as late as People ex rel. Armstrong v. Warden, 183 N. Y. 223, 76 N. E. 11, 2 L. R. A. (N. S.) 859, in which it was held that the equal rights clause of the fourteenth amendment did not contemplate territorial equality, but only required that all persons similarly situated should be alike affected by the law. There is nothing in conflict with this view in Fisher Co. v. Woods, 187 N. Y. 90, 79 N. E. 836, 12 L. R. A. (N. S.) 707, for in that case the court simply held that it was beyond the

power of the Legislature to say that any person committed a crime who offered real property for sale without written authority. A familiar example of concededly constitutional restrictions affecting certain persons only, but operative alike against all persons similarly situated, is the prohibition of the carrying on of noxious trades, such as keeping swine, slaughtering animals, etc., in cities and villages. The same acts can be done outside the city or village limits, but not within. Only certain persons are affected, and yet it is not class legislation prohibited by the federal Constitution. The decisions in Gulf, Colorado & Santa Fé Railway Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, and Cotting v. Kansas City Stockyards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, relied upon by the defendant, are not to the contrary. In the former case the right of the state Legislature to make classification was recognized, but the imposing upon railroad companies of certain additional costs was deemed to be unreasonable; and in the latter case the statute of Kansas was held to be unconstitutional, because it applied only to the stockyards located in Kansas City and not to those in other portions of the state.

It does not seem to me, however, that there is any classification in the act under consideration. The Legislature has selected, as it had a right to do, certain acts which it deemed detrimental to the natural mineral springs of the state and has declared them to be unlawful. That it ought to have included other acts, or that other acts might be as injurious, does not make the law unconstitutional, for all persons within the sphere of its operation are equally affected and equally protected by the law.

It is urged that the plaintiffs have also pumped, and hence that they do not come into a court of equity with clean hands. It is true that equity does not settle quarrels between wrongdoers. The papers show that at another spring owned by the plaintiffs they have used a hand pump to obtain water or clear the spring. I do not think such an act comes within the statute or should deprive the plaintiffs of such right as they have under the statute. If they were engaged in the same business as the defendant and forcing by powerful pumps water from great depths in the rock, each trying to get more than the other, there would be no question that they should be denied an injunction. This they are not doing or charged with doing. I have not attempted to give all the reasons which might be advanced in favor of or against the constitutionality of the law. I have contented myself with stating some general propositions which appeal to me as a reason why it seems my duty to declare the law constitutional, and why I deem the issuance of an injunction proper on the ground that the defendant is violating the statute.

Another reason why granting of an injunction is not improper is that it is very likely that a decision by the appellate courts as to the constitutionality of the law will determine the litigation. If it be declared valid, there will be little defense; and, if it be declared invalid, the plaintiffs will apparently have great difficulty in establishing a violation of their common-law rights. The Appellate Division of this department can pass upon the question at its September term and a

decision reached within a short time. The granting of an injunction suspends the defendant's business, and it should be protected by adequate bond, so that its loss and expenses may be made good in case the plaintiffs shall fail in their action.

An injunction is granted during the pendency of the action on the plaintiffs giving to the defendant a bond of $20,000 and stipulating to place the cause upon the September calendar of the Appellate Division, if the defendant shall appeal from this order, and to accept two days' notice of argument. Ordered accordingly.