(November 20, 1908.)

DELPHINE LE QUIME and RICHARD R. LOWE, Appellants, v. JOSEPHUS CHAMBERS, Respondent.

[98 Pac. 415.]

WATER APPROPRIATIONS ON PUBLIC LANDS—PATENTS SUBSEQUENT TO WATER APPROPRIATION AND EASEMENT—SEEPAGE AND PERCOLATING WATERS SUBJECT TO APPROPRIATION.

1. Where L. enters upon a tract of land claimed and held by I. as a homestead entry, and appropriates and diverts the waters of a spring thereon and conveys the same by means of a pipe to other lands, and thereafter I.'s homestead entry is canceled and C. enters the land as a homestead, the latter takes the same subject to the burden and servitude of L.'s water appropriation and easement, and under the statute of this state and sec. 2339 of the Rev.

Stat. of the U. S., such water right and easement will be protected by the courts.

2. In this case I. did not complain of the entry, appropriation and diversion made by L., and the government could not do so because it has given its express assent thereto by statute, and the land was therefore impressed with L.'s water right, appropriation and easement at the time of the entry thereof by C.

3. Under the statutes of this state, section 1 of the act of March 11, 1903 (Sess. Laws 1903, p. 223), any person, association or corporation within the state may appropriate and divert "the waters of any natural streams, springs or seepage waters or lakes or other public waters in the state of Idaho" for any useful or beneficial purpose.

4. It can make no difference that the waters collecting and forming what is known as a spring are seepage and percolating waters, rather than from a well-defined subterranean stream, so long as such waters gravitate to and collect at a certain and definite point, and there constitute a volume of water known and designated as a spring. In either case such waters found upon the public domain are subject to location and appropriation for any useful or beneficial purposes under the statutes of this state, and are therefore protected and reserved from future disposition under the act of Congress, sec. 2339, Rev. Stat. of the U. S.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District, for the County of Nez Perce. Hon. Edgar C. Steele, Judge.

Action by plaintiffs to quiet their title to a certain water right, appropriation and easement, and to enjoin and restrain defendant from disturbing or interfering therewith. Application for injunction *pendente lite* denied, and plaintiffs appealed. *Order reversed.*

John O. Bender, for Appellant.

This land must have reverted to the government of the United States, and become again a part of the public domain, from the Irwin entry, before the defendant could have entered it; and whether the appropriation of water by the plaintiffs was made during the Irwin entry or while the land was a part of the public domain is immaterial. (*Maffet v.*

*Quine,* 93 Fed. 347.)    The government does not guarantee to whom it gives a preference right that he shall take the land in the same condition as it was under the first entry, but it is inserted in the patent that the entryman takes the land subject to any vested or accrued water rights.    (*Wagstaff v. Collins,* 97 Fed. 8, 38 C. C. A. 19; U. S. Rev. Stat., sec. 2340.)    But it does guarantee to the appropriator of water on the public domain, when the appropriation is acknowledged by local custom, laws and the decision of the courts, protection in the same.    (U. S. Rev. Stat., sec. 2339.)

Under the facts in this case it is not material at what time this land reverted to the government, since it necessarily became a part of the public domain at some time before defendant's entry and while plaintiffs had appropriated the water.    (*San Jose Land and Water Co. v. San Jose Ranch Co.,* 129 Cal. 673, 62 Pac. 271.)

The fact that this water flows from a spring which may owe its existence to seepage, percolation and filtration from tiny feeders beneath the soil and through the rock, as claimed by defendant, does not exclude it from appropriation under the law.    (*De Necochea v. Curtis,* 80 Cal. 397, 20 Pac. 564, 22 Pac. 198; *Cohen v. Le Ganada Land & Water Co.,* 142 Cal. 437, 76 Pac. 48; *Katz v. Walkinshaw,* 141 Cal. 116, 99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236; *Silver Peak Mines v. Valcalda,* 79 Fed. 889; *Williams v. Harter,* 121 Cal. 47, 53 Pac. 407; *Ely v. Ferguson,* 91 Cal. 187, 27 Pac. 587.)

The patentee of land has no claim upon the water flowing through the same as against a prior appropriator.    (*Drake v. Earhart,* 2 Ida. 756, 23 Pac. 541; *Mohl v. Lamar Canal Co.,* 128 Fed. 778.)

Clay McNamee, for Respondent.

"The law controlling the rights to subterranean waters not running through a channel or defined course is very different from that affecting the rights of surface streams.    In the former case the water belongs to the soil, is a part of it, is owned and possessed as the earth is; it may be used, removed, and controlled to the same extent by the owner; and no action

will lie for injuries caused by cutting it off." (*Southern Pacific R. Co. v. Dufour,* 95 Cal. 615, 30 Pac. 783, 19 L. R. A. 92; *Hanson v. McCue,* 42 Cal. 303, 10 Am. Rep. 299; *Lux v. Haggin,* 69 Cal. 394, 10 Pac. 674; *Delhi Trustees v. Youmans,* 50 Barb. 316; *Mosier v. Caldwell,* 7 Nev. 363; *Metcalf v. Nelson,* 8 S. D. 87, 59 Am. St. Rep. 747, 65 N. W. 911; *Wilson v. City of New Bedford,* 108 Mass. 265, 11 Am. Rep. 352; *Roath v. Driscoll,* 20 Conn. 533, 52 Am. Dec. 352; *Frazier v. Brown,* 12 Ohio St. 294; *City of Emporia v. Soden,* 25 Kan. 588, 37 Am. Rep. 265; *Clark v. Conroe,* 38 Vt. 469; *Taylor v. Fickas,* 64 Ind. 167, 31 Am. Rep. 114; *Meyer v. Tacoma Light & Water Co.,* 8 Wash. 144, 35 Pac. 601.)

AILSHIE, C. J.—This is an appeal from an order denying the plaintiffs an injunction *pendente lite.* There seems to be practically no dispute between the parties as to the facts in the case. The only question to be determined is one of law. On June 22, 1905, one Wm. D. Irwin made homestead entry at the Lewiston Land Office for the NW. ½ of the SW. ¼ of Sec. 21, and the NE. ¼ of the SE. ¼ and the E. ½ of the NE. ¼ of Sec. 20, Tp. 36 N., R. 5 W., B. M. Nez Perce county. On about November 15, 1905, plaintiffs herein, with the consent of Irwin, began working on and developing the waters of a spring situated on this homestead, acting under the assumption that the old statute of this state governing the location and appropriation of waters was still in effect, proceeded to post notices of the appropriation at the point of diversion, which was at the spring, and in pursuance thereof developed and diverted the waters of the spring. Thereafter, and on learning that the law had been amended, the plaintiffs applied to the state engineer for a permit to appropriate the waters, and thereafter, and on April 21, 1906, received permit No. 19,060 from the state engineer, and thereafter and in August of the same year, made proof of the completion of the works and the application of the water to a beneficial use under the provisions of this permit. The plaintiffs constructed a pipe-line from this spring to the land belonging to them, conveying the water to the place of in-

tended use, and have ever since been using the water for domestic purposes and irrigation, and apparently have no other means of supplying themselves either for domestic purposes or purposes of irrigation. The water so appropriated amounts to about one-fourth of a cubic foot per second. On February 23, 1906, the defendant, who is respondent herein, filed a contest in the United States land office at Lewiston against the Irwin homestead, alleging the failure of Irwin to establish a *bona fide* residence on the land as provided by law and the regulations of the land office. The contest was thereafter heard in the United States land office, and a decision was rendered recommending the cancellation of the homestead entry. An appeal was taken from that decision to the commissioner of the general land office, and thereafter and on July 15, 1907, the commissioner rendered his decision affirming the judgment of the local land office. Thereafter an appeal was taken to the secretary of the interior, and on January 28, 1908, the decision of the commissioner and of the local land office were affirmed. On March 30, 1908, the Irwin homestead entry was ordered canceled, and the respondent herein, Chambers, was given a preference right to file on the land. Thereafter and on April 8, 1908, and in pursuance of the preference right given him, Chambers made his homestead entry No. 12,558 on this tract of land. Thereafter and on about April 15, 1908, Chambers tore up and removed the pipe that plaintiffs had placed across this land and through which the waters were conveyed from this spring to plaintiffs' premises. The plaintiffs thereupon commenced this action to secure a perpetual injunction against defendant, enjoining and restraining him from interfering with plaintiff's water right and pipe-line. The water in controversy and involved in this action comes wholly from a spring that arises on the land in question, now the homestead of defendant and respondent, and at no time prior to this diversion does it appear that it ever flowed a sufficient quantity or volume to form a surface stream or carry any water beyond the limits of this homestead. What little water did

flow from the spring was immediately taken up by the soil adjacent to the spring.

The appellants contend that they originally went on to this land with the consent of Irwin, the first homestead entryman, and that so far as the government of the United States is concerned they had the consent to enter and appropriate any waters on the land under and by virtue of the provisions of sec. 2339 of the Rev. Stat. of the United States. Under this latter statute it is provided that:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes have vested and accrued, and the same are recognized and acknowledged by the local customs, laws and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of. way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed. . . . ."

The respondent contends in support of the judgment of the trial court that this land was not public domain, but, on the contrary, had been segregated therefrom by the Irwin homestead entry, and was not open to the acquisition of a water right and right of way for pipe-line prior to the cancellation of the Irwin homestead entry, and that immediately upon the cancellation of the homestead entry, the respondent's preference right attached by virtue of his having been the successful contestant of the homestead entry. Respondent insists that no right attached on the part of the appellants or anyone else between the time of the cancellation of the first homestead entry and the making of respondent's entry thereafter. This contention is fully answered and disposed of by some of the decisions to which our attention has been called.

In the case of *Maffet v. Quine,* 93 Fed. 347, this identical legal proposition arose over a water right and right of way for flume over land within the Northern Pacific land grant, which land was subsequently patented to Quine under a homestead entry. On this question Judge Bellinger said:

"As to the second question, it is immaterial whether these lands were covered by the grant to the Northern Pacific Railroad Company or not. If they so were, there must have been an interval of time when their ownership was reinvested in the government of the United States, in order to enable them to be taken under the homestead laws, and at such time the pre-existing appropriation and use would be as effective as if subsequently made, and when the title had so reinvested in the government."

This principle is more tersely stated in the second paragraph of the syllabus as follows:

"When land included in a railroad grant reverts to the government, a subsequent patentee under the homestead laws takes the title subject to the right of way for a ditch or canal over it which was acquired prior to his entry; and it is immaterial whether the appropriation was made prior or subsequent to the time the government was reinvested with title."

A petition for a rehearing was subsequently granted in that case, and an additional opinion was thereafter filed and is reported in 95 Fed. 199. In the subsequent opinion the court, dealing with this same question, said:

"It does not alter the case that the act of Congress gives homesteaders an exclusive right, for six months after the forfeiture, to enter the forfeited lands under the homestead laws. This is a mere preference. It in no wise affects the title taken by the homesteader, and does not enlarge his rights over what they would have been without this preference. As between the defendant and another seeking title under the homestead laws of the United States, the statute would operate to give the defendant the better right. Neither this statute, nor the fact of the prior grant to the Northern Pacific, can affect the fact that Quine, the defendant, takes his title from the government. After the forfeiture, the title to this land was reinvested in the government, and passed from the government to Quine, and he took this title subject to the location of the plaintiff's flume under the acts of Congress. There is an express reservation in the patent to

the defendant, which shows that it was not the purpose of Congress to convey any right inconsistent with that held under such a location. This land was liable to the imposition of this burden, while the title was in the government, and so of any right in the government at the time the flume was built. The railroad company did not complain, and the government could not, since what was done was in conformity with public policy and was authorized by law. In short, the title and all rights and interests relating to this land were either in the railroad company or in the government when the flume was built, and the appropriation was acquiesced in by the former and expressly authorized by the latter.''

The same question arose in *San Jose Land & Water Co. v. San Jose Ranch Co.*, 129 Cal. 673, 62 Pac. 269, and the supreme court of California said:

''Whether defendant's predecessors could acquire any rights of way or other easements, or appropriate the waters of San Dimas creek, after the grant to the Atlantic and Pacific Company, if that company had finally perfected its right to a title and had objected to such appropriation, need not be decided. While the land was withdrawn from entry under its grant, it did not object to defendant's appropriation, and before any rights were acquired by plaintiff's predecessors the land was restored to the public domain, and whatever rights defendant's predecessors had acquired by appropriation of water or rights to make ditches and lay pipe-lines attached at once upon the forfeiture of the grant of the Atlantic and Pacific Company by the act of 1886 and the restoration of the land to the public domain. If the land had not been granted to the Atlantic and Pacific Company, the rights of the appropriators would have attached to the land under the act of July 27, 1866, and amendatory acts, granting the right to construct ditches, etc.; and we see no reason why, upon the failure of the grant and the resumption to full title by the government, the defendant's rights did not become valid from their inception.''

We conclude from the foregoing authorities, as well as upon the reason of the matter, that the appellants' water right had attached in conformity with the state law and the

act of Congress prior to the filing of respondent's homestead entry, and that respondent consequently acquired his right in and to the land from the United States subject to the prior right of way and water location of appellants. If it be contended that this right was acquired at a time when the land had been segregated from the public domain and during the existence of the Irwin homestead entry, the answer to that is that it appears to have been done with the consent and acquiescence of Irwin the entryman. If, on the other hand, it be contended that the land was at all times a part of the public domain prior to the entry of respondent, then the answer is that the act of Congress above quoted conferred the right, and that the entry of appellants was with the consent of the United States, the owner of the fee. Or, if it be conceded, as we think is the correct proposition, that this land was segregated from the public domain until the cancellation of the Irwin homestead, and thereupon it reverted to the public domain and remained such until the entry was made by respondent, then there must have been a period of time during which the land was public domain and subject to the rights and claims of appellants, and at which time these rights properly and legally attached under the act of Congress. In any event, this land was impressed with the burden and servitude of appellants' water right and easement at the time of respondent's entry.

It is next contended by respondent that since the waters going to make up this spring are purely seepage and percolating waters and do not come from any well-defined subterranean stream, they are not subject to location under the laws of this state, and that their appropriation is, therefore, not protected under the act of Congress. In line with this contention it is argued that percolating and seepage waters are as much a part of the land itself as the soil, the rock and stone found therein, and that such waters are not the subject of appropriation or diversion. The principal case relied on by respondent in support of this contention is *Southern Pac. R. R. Co. v. Dufour*, 95 Cal. 615, 30 Pac. 783, 19 L. R. A. 92. In that case it was held that "The law controlling the rights to subterranean waters not running through a channel or de-

fined course is very different from that affecting the rights of surface streams. In the former case the water belongs to the soil, is a part of it, is owned and possessed as the earth is, —it may be used, removed and controlled to the same extent by the owner; and no action will lie for injuries caused by cutting it off.'' This case, however, has been distinguished and greatly modified, if not entirely overruled, on this particular point in the more recent cases of *Katz v. Walkinshaw*, 141 Cal. 116, 99 Am. St. Rep. 35, 70 Pac. 663, 64 L. R. A. 236, and opinion on rehearing, 74 Pac. 766, and the case of *Cohen v. La Canada L. & W. Co.*, 142 Cal. 437, 76 Pac. 47.

In *Katz v. Walkinshaw*, the previous California cases are reviewed in detail and classified, and the doctrine is squarely announced that seepage and percolating waters may be appropriated, and such appropriation will be recognized and protected by the courts.

In *Cohen v. La Canada L. & W. Co.* the controversy arose over some springs on vacant public land. The plaintiff drove pipes into the rocks at the springs and piped off the water. Later the defendant came and drove tunnels near by, causing the water to cease flowing in the pipes and to flow through the tunnel. The court gave judgment against the subsequent comer and in favor of the prior appropriator. These cases are discussed and reviewed in Wiel on Water Rights, secs. 77 to 80, inclusive, and the author concludes that they mark the establishment of a new rule in California with reference to seepage and percolating waters. In this case, however, the facts are somewhat different, for the reason that whether the waters are from a well-defined subterranean stream or purely seepage and percolating waters, it nevertheless stands as an admitted fact in the case that they flow to and collect at a definite and certain place, and there form what is called by all parties a spring. The fact that the water of this spring in its natural state, before any appropriation or diversion, was lost in the adjacent soil and did not flow off the land in a definite stream can make no difference, and in no way abridges the right of the first comer to locate and appropriate and develop the same for a useful or beneficial purpose. If the land on which this spring was located had

already been patented before the location by appellants, then a different question would arise, because appellants would have been trespassers in entering upon the land for the purpose of locating, appropriating and diverting the water, unless they first had acquired a license or easement so to do. On the other hand, the government, by act of Congress, invites persons to enter upon the public domain for the purpose of locating, appropriating and diverting any waters thereon found for such useful and beneficial purposes as are recognized by the laws of the state or jurisdiction within which the lands are located. The statute of this state, sec. 1 of the act of March 11, 1903 (Sess. Laws 1903, p. 223), specifically recognizes the right of any person, association or corporation within this state to appropriate and divert "the waters of any natural streams, springs or seepage waters or lakes or other public waters in the state of Idaho." The water involved in this case comes clearly within the purview of the foregoing statute.

In the case of *Sullivan v. Northern Spy Min. Co.*, 11 Utah, 438, 40 Pac. 709, 30 L. R. A. 186, the supreme court of Utah held that the "discoverer of percolating waters on public lands, by digging a well for the purpose of collecting the same for use, acquires an easement in the land for the maintenance of his well and the right to the water as an appropriator thereof as against a subsequent locator of the land upon which the well is situated."

We conclude that the trial court erred in denying appellants' application for a temporary injunction restraining and enjoining defendant from breaking and destroying plaintiffs' water-pipes and interfering with their water right as set out in their complaint and admitted by defendant's affidavits.

The order denying the application for a temporary injunction is reversed and the cause remanded, with direction to the trial court to take such further action in the premises as is in harmony with the views herein expressed. Costs awarded in favor of appellants.

Sullivan, J., and Stewart, J., concur.