(No. 5482. February 21, 1931.)

WALTER J. HINTON et al., Respondents, v. W. G. LITTLE, W. F. JONES, LOUIS C. NEISWANGER and CHARLES S. NEISWANGER, Appellants.

[296 Pac. 582.]

Luther W. Tennyson, T. L. Martin and Wm. M. Morgan, for Appellants.

Oppenheim & Lampert and Edwin Snow, for Respondents.

GIVENS, J.—The complaint alleges and the affidavits in support of the temporary injunction are of similar effect, and the testimony of the witness for the plaintiffs on the hearing in regard to the temporary injunction, shows undenied and undisputed except by defendants' answer, which merely generally denies the allegations of the complaint, that the territory in question is underlaid at a depth of from two to three hundred feet, and beneath an impervious stratum, by subterranean waters confined horizontally between this upper impervious stratum and lower stratum, of such a nature as to force this subterranean water when artificial openings are made in the upper stratum to, and in some instances above, the surface of the ground. Laterally the subterranean waters are evidently continuous and permeate throughout the basin, inasmuch as the allegations and evidence show that the flow of all the wells are more or less interdependent and are affected by the increased or diminished flow of each well. The engineer for the plaintiffs further testified that the water entered this subterranean basin from high mountains lying to the south of the basin.

E'vidently there is thus some movement of this water at least into the basin from the south and laterally beneath the ground and between the different wells.

Respondents contend that the same rule is to be applied to the appropriation of these subterranean waters as is applied to surface waters, namely, first in time is first in right. Appellants contend on the other hand for either what is known as the English or common-law doctrine, that the owner of the surface of the ground owns all the water within his land, or the so-called American doctrine. It is evident that the English doctrine cannot be applicable because when any one of the land owners in question, so far as the evidence now shows, takes water from his well, it diminishes the flow in the other wells; hence it would seem apparent that he is taking not alone that which belongs to him, as underlying his land, but is in some measure at least, taking either directly or indirectly that which comes from underneath the land of other owners. Appellants contend for what is sometimes called the American, or the correlative use doctrine, in effect this, that under circumstances as disclosed above, each surface owner is entitled to take his proportionate share of the entire body of underground water, in the particular basin underlying the lands in question and affected by the different wells. There are numerous authorities which sustain the English doctrine and there are authorities which define and sustain the American doctrine of correlative use, the first case probably clearly announcing the American doctrine being *Katz v. Walkinshaw*, 141 Cal. 116, 99 Am. St. 35, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236. Without attempting to enumerate, cite, examine or distinguish all of the decisions from the different jurisdictions, which have had occasion to touch upon this question, there are in this state four decisions which bear upon the question.

Appellants contend that *King v. Chamberlin*, 20 Ida. 504, 118 Pac. 1099, 1100, and *Public Utilities Com. v.*

*Natatorium Co.*, 36 Ida. 287, 211 Pac. 533, sustain their doctrine, and respondents contend that *Le Quime v. Chambers*, 15 Ida. 405, 98 Pac. 415, 417, 21 L. R. A., N. S., 76, and *Bower v. Moorman*, 27 Ida. 162, Ann. Cas. 1917C, 99, 147 Pac. 496, 500, sustain their position. From an analysis of these four cases and a consideration of the legislative enactments therein cited, with regard to subterranean waters, we have a fairly well-defined announcement both by this court and the legislature as to what rule is to be applied in this state in connection with the appropriation of underground waters. It appears to be now fairly well settled that all underground subterranean waters are percolating waters, that is, that there is more or less movement, both perpendicular and horizontal, through the earth and rocks. Therefore, whether underground waters move in a well-defined channel, either in a generally confined direction as to the points of the compass or spread out laterally, is merely a question of difference or degree.

It would seem, therefore, that it is impossible to attempt to lay down one rule with regard to subterranean waters, existing more or less as a relatively stationary body of water under the ground, and subterranean waters in which there is a decided movement. In any event, the facts in the case at bar show that there is movement of the underground waters involved in this litigation and we need pass herein on no other situation.

In *Le Quime v. Chambers, supra,* a spring upon certain land at no time prior to its diversion flowing a sufficient quantity or volume to form a surface stream or carry any water beyond the limits of the subdivision on which it arose, was appropriated. The land on which the spring arose was filed upon by one Irwin. Upon a contest Chambers was given a preference right to file on the land and tore up Le Quime's pipe, which he had theretofore used to convey the water in question to other lands. Chambers contended, as the appellants do herein, that the ownership of the land

gave him the exclusive right to this water. Le Quime contended that the water was subject to appropriation, and he being prior in point of time was entitled to it, though the case really involved water coming naturally to the surface, not by way of an artificial well; the court said in this connection:

"It is next contended by respondent that since the waters going to make up this spring are purely seepage and percolating waters and do not come from any well-defined subterranean stream, they are not subject to location under the laws of this state, and that their appropriation is, therefore, not protected under the act of Congress. In line with this contention it is argued that percolating and seepage waters are as much a part of the land itself as the soil, the rock, and stone found therein, and that such waters are not the subject of appropriation or diversion. The principal case relied on by respondent in support of this contention is *Southern Pac. R. R. Co. v. Dufour*, 95 Cal. 615, 30 Pac. 783, 19 L. R. A. 92. In that case it was held that ''The law controlling the rights to subterranean waters not running through a channel or defined course is very different from that affecting the rights of surface streams. In the former case the water belongs to the soil, is a part of it, is owned and possessed as the earth is,—it may be used, removed and controlled to the same extent by the owner; and no action will lie for injuries caused by cutting it off.' This case, however, has been distinguished and greatly modified, if not entirely overruled, on this particular point in the more recent cases of *Katz v. Walkinshaw*, 141 Cal. 116, 99 Am. St. 35, 70 Pac. 663, 64 L. R. A. 236, and opinion on rehearing, 74 Pac. 766, and the case of *Cohen v. La Canada L. & W. Co.*, 142 Cal. 437, 76 Pac. 47.

"The fact that the water of this spring in its natural state, before any appropriation or diversion, was lost in the adjacent soil and did not flow off the land in a definite stream can make no difference, and in no way abridges the

right of the first comer to locate and appropriate and develop the same for a useful or beneficial purpose."

The appellants argue, however, that this language in the opinion negatives respondents' contention.

"If the land on which this spring was located had already been patented before the location by appellants, then a different question would arise."

It will be observed, however, that immediately following the phrase above quoted, the opinion said:

"On the other hand, the government, by act of Congress, invites persons to enter upon the public domain for the purpose of locating, appropriating and diverting any waters thereon found for such useful and beneficial purposes as are recognized by the laws of the state or jurisdiction within which the lands are located. The statute of this state, sec. 1 of the act of March 11, 1903 (Sess. Laws 1903, p. 223), specifically recognizes the right of any person, association or corporation within this state to appropriate and divert 'the waters of any natural streams, springs or seepage waters or lakes or other public waters in the state of Idaho.' The water involved in this case comes clearly within the purview of the foregoing statute.

"In the case of *Sullivan v. Northern Spy Min. Co.*, 11 Utah, 438, 40 Pac. 709, 30 L. R. A. 186, the supreme court of Utah held that the 'discoverer of percolating waters on public lands, by digging a well for the purpose of collecting the same for use, acquires an easement in the land for the maintenance of his well and the right to the water as an appropriator thereof as against a subsequent locator of the land upon which the well is situated."

It is thus apparent that this case clearly held that seeping, percolating subterranean waters, though not in a well-defined stream, are the subject of appropriation, and that the rule of first in time, first in right, is applicable thereto.

*King v. Chamberlin, supra,* involved only surface water "impounded by a land owner wholly upon his own land by means of dams and dikes and collected from the melting

snows and surface water." This case therefore is not in point in the controversy here because the waters involved in the instant case were not impounded on or beneath appellants' lands by any act of theirs.

*Bower v. Moorman, supra,* involved relative appropriation rights in adjacent wells where the taking of water from one well affected the flow in the other, the court stating the three pertinent questions to be considered as follows:

"First, the right of a land owner to drive a well on his own land in order to obtain subterranean waters; second, to what depth and under what conditions may a' well be driven before a permanent injunction will lie at the instance of an adjoining land owner, who is a prior appropriator of subterranean waters, for an interference with the flow of water in said adjoining land owner's well; third, are subterranean waters in this state subject to appropriation for a beneficial use."

The third and last of these considerations is the pertinent and decisive question herein and was clearly, unequivocally and decisively disposed of. After reviewing the so-called English doctrine and the reasonable use of correlative right doctrine, as announced in *Katz v. Walkinshaw, supra,* and quoting sec. 3242 of the Rev. Codes (C. S., sec. 5558), to the effect that "the right to the use of waters of rivers, streams, lakes, springs and subterranean waters, may be acquired by appropriation" and citing *Le Quime v. Chambers, supra,* the court holds:

"Any interference with a vested right to the use of water, whether from open streams, lakes, ponds, percolating or subterranean water, would · entitle the party injured to damages, *and an injunction would issue perpetually restraining any such interference.*" (Italics ours.) And again, "Had the wells been permitted to flow freely without any obstruction and in the usual and ordinary manner, it could then easily have been determined whether there was a loss of water in the Bower wells, and if this were found to be

true, it would necessarily follow that it was caused by reason of the construction of the Moorman well."

And the further discussion in this case on page 183 of 27 Ida., 147 Pac., at 503, clearly shows that the doctrine or rule of correlative use was not in any way being sanctioned, since the court points out that before an injunction will issue it must appear that the second appropriator's well diminishes the flow in the first, and there is no suggestion of joint or correlative use or right. It seems clear, therefore, that *Bower v. Moorman, supra,* positively sustains respondents' position.

Taking up now the last case, *Public Utilities Com. v. Natatorium Co.,* 36 Ida. 287, 211 Pac. 533, while there is a discussion therein as to the appropriation of subterranean waters, the question involved was whether the Natatorium Company which delivered hot water, procured from wells upon its lands, to various users for the purpose of heating their houses, was a public utility. The majority held there was no intention on the part of the company to dedicate this water to a public use and that the water was not public water, so as to compel the company by its use of the water in the manner in which the water was used to become a utility, expressly stating, 36 Ida., at 300, 211 Pac. 533, 535, that:

"The right to appropriate subterranean waters is not involved in this case as disclosed by the record and the cases cited in support of the right to appropriate subterranean waters have no application."

It is therefore unnecessary to consider further *Public Utilities Com. v. Natatorium Co., supra,* since the court itself stated therein that it did not involve the question before us here.

■ We then have a clear statement in *Bower v. Moorman, supra,* to the effect that subterranean waters are the subject of appropriation. That being true, it follows that the judgment herein should be affirmed, since the waters here were appropriated by the respondents prior to the time that

the appellants sought to take from their wells the amount of water now claimed by them.

Judgment affirmed; costs awarded to respondents.

Lee, C. J., and Varian and McNaughton, JJ., concur.

Petition for rehearing denied.

BUDGE, J., Dissenting.—The several plaintiffs and defendants are owners of separate tracts of land near Grandview, Owyhee county. The lands, being arid, depend for irrigation upon water supplied from artesian wells, eighteen of which are on plaintiffs' lands and three on defendants'. Plaintiffs claim as a prior right to the use of all artesian waters in the district on the theory of priority in appropriation and beneficial use. This action was instituted by plaintiffs to have their respective water rights determined and quieted and to enjoin interference therewith by defendants. Upon motion by plaintiffs, resisted by defendants, the district court issued an injunction *pendente lite* having the effect of restraining defendants from the use of water from their wells with which to irrigate some twenty-five or thirty acres of their land additionally placed under cultivation. The defendants have appealed from the order granting the injunction and denial of their motion to dissolve the injunction.

The waters used by the parties derive from an underground source, being brought to the surface by means of wells piercing impermeable strata under which the waters are confined at varying depths. Plaintiffs allege, and as a basis of the discussion to follow the facts may be taken to show that the appropriations by plaintiffs of water from their wells practically exhaust the supply, so that if defendants increase the flow of water from their wells with which to irrigate new or additional lands the pressure in plaintiffs' wells will be diminished and the flow from their wells thereby materially decreased.

The issue here is clear-cut, viz., whether the artesian waters, the subject of this action, are private waters belonging to the respective owners of the freehold, or are subject to appropriation as public waters under the Constitution and laws of the state.

It is said that subterranean waters are divided into two classes: (1) percolating waters, and (2) underground streams. (Annotation, 55 A. L. R., pp. 1386–1566.)

Definitions and descriptions of percolating waters have been many and varied, such as "those oozing or percolating through the soil in varying quantities and uncertain directions; water flowing, seeping, or circulating beneath the surface of the ground, without banks or defined channels, and whose course is invisible and unknown; those which ooze, seep, or filter through the soil beneath the surface, without a defined channel, or in a course that is unknown and not discoverable from surface indications, without excavation for that purpose; those which pass through the ground beneath the earth, without defined channels," etc. (Note, 55 A. L. R., p. 1388, and cases cited.)

If the underground water flows in a stream with a well-defined channel, and its existence, location, and course are known or knowable from extraneous facts, then the same rules apply as if the stream were upon the surface. It is well settled that, unless it is shown that the underground water flows in a defined and known channel, it will be presumed to be percolating water. This presumption it is difficult to overcome, as in a great majority of cases the exact condition or course of the underground water is not known, nor readily ascertainable, but the burden of proof is on him who alleges that the water flows in a known and defined channel, and he must lose unless he can overcome the presumption by affirmative proof to the contrary. This *onus* of proof requires it to be shown that, without opening the ground by excavation, or having recourse to abstruse speculation of scientific persons, men of ordinary powers and attainments would know, or could with reasonable diligence

ascertain that the stream, when it emerges into light, comes from, and has flowed through, a defined subterranean channel. (*Clinchfield Coal Corp. v. Compton*, 148 Va. 437, 139 S. E. 308; note, 55 A. L. R. 1376, and cases cited.)

Under the common-law or English rule, percolating waters are regarded as belonging to the owner of the freehold, like the rocks, soil and minerals found there, and such owner may, in the absence of malice, intercept, impede and appropriate such waters while they are upon his premises, and make whatever use of them he pleases, regardless of the fact that his use cuts off the flow of such waters to adjoining lands, and deprives the adjoining land owner of their use. However, this doctrine as to rights in percolating waters has been quite generally modified in this country by later decisions, the courts applying what has been called, variously, the rule of reasonable use, the rule of correlative rights, or the American rule—best expressed by the maxim that one must use his own as not to injure another—that each land owner is restricted to a reasonable exercise of his own rights and a reasonable use of his own property, in view of the similar rights of others. Thus, where two or more persons own contiguous tracts of land, underlaid by porous material extending to and communicating with them all, which is saturated with water moving with more or less freedom therein, it has been held each has a common and correlative right to the use of this water upon his land to the extent of a reasonable share thereof if the supply is so scant that the use by one will affect the supply of the others. (*Hudson v. Dailey*, 156 Cal. 617, 105 Pac. 748; *Eckel v. Springfield Tunnel & Dev. Co.*, 87 Cal. 617, 262 Pac. 425; *Katz v. Walkinshaw*, 141 Cal. 116, 99 Am. St. 35, 70 Pac. 663, 74 Pac. 766, 64 L. R. A. 236; Kinney on Irrigation and Water Rights, 2d ed., sec. 1192.) In *Vanderwork v. Hewes*, 15 N. M. 439, 110 Pac. 567, the court expressed the opinion that the rule of reasonable use or correlative rights applied to water in artesian basins or a like place of supply.

While there is some authority to the contrary, it may be stated as a general rule that the rules of law applying to the appropriation of surface waters do not apply to waters percolating through the earth without a defined and known channel, and that such waters are not subject to appropriation. (Cases cited, note, 55 A. L. R., p. 1444.) In effect conceding the waters here in controversy are percolating waters, plaintiffs contend they are subject to the doctrine of appropriation and its incidents, the same as public surface waters.

In *Le Quime v. Chambers,* 15 Ida. 405, 98 Pac. 415, 21 L. R. A., N. S., 76, the original entryman on unpatented lands consented to the diversion of waters from a spring situated on the homestead, by another. It was held that a subsequent entryman could not interfere with the water right so established, the land being impressed with the burden and servitude of the water right and easement at the time of entry of the second entryman. Several reasons were assigned for such holding, among them that a section of a United States statute (sec. 2339, Rev. Stats. U. S.) expressly assented to the appropriation of such waters on government land and the water right had attached prior to the filing of the second entry, consequently the second entryman acquired his right in and to the land from the United States subject to the prior right of way and water location of the other party, with the consent of the original entryman— the land, upon the cancellation of the first entry, reverting to the public domain and being subject to the rights and claims of the appropriator of the water, and during the time intervening between the cancellation of the first entry and the second entry the rights to the water properly and legally attached under the United States statute. It will be seen there was consent to the appropriation in the first instance, and the water was taken from a spring, at its source, on public land, and the appropriation of such water was expressly authorized by statute; the opinion stating a differ-

ent question would arise if the land had been privately owned before the appropriation of the water.

Plaintiffs place especial reliance upon the opinion of this court in *Bower v. Moorman*, 27 Ida. 162, Ann. Cas. 1917C, 99, 147 Pac. 496, 501, as rejecting the common-law theory as to rights in percolating or underground water, as well as the doctrine of reasonable use or correlative rights. In that case respondents had sunk several artesian wells upon their property which discharged water in various amounts. Appellants purchased an acre of land within 300 feet of respondent's wells, purposing to obtain water in the same manner as respondents, to be used on another tract of land about a mile and a quarter away. After appellants had sunk their well to a depth of about 200 feet, respondents brought suit against them and obtained an order restraining appellants from further prosecuting the work of sinking their well, alleging that in so doing the flow of water in respondents' wells was interfered with and materially lessened. In reviewing the case this court discussed the English or common-law rule governing the right to the use of percolating waters—to the effect, as hereinabove indicated—that percolating waters belong to the owner of the land and may be used as seen fit, without liability to anyone. Then considered was the rule of reasonable use or correlative rights, the opinion saying:

"Where percolating water exists in a state of nature generally throughout a tract of land that has been subdivided, the ownership of which is held in different proprietors, it would seem to be an impossible rule to adopt, whereby each proprietor is given the absolute right to withdraw all of the percolating waters underneath the ground owned by each one, by the driving of wells and installing of powerful pumps, or the withdrawal of the waters in any other manner that might be possible by reason of recent inventions, and thus destroy the benefits made possible by the proper regulation of percolating waters obtained by any of the above methods, for a beneficial use; and an injunction will issue

to restrain any permanent interference by an adjacent land owner with the right to the use of subterranean waters acquired by a prior appropriator.''

It may be that in the opinion above referred to there is some language which might be taken to mean that the writer was subscribing to the theory that percolating water is subject to appropriation the same as public surface waters or underground streams. What the writer had in mind, however, was the application of the rule of reasonable use or correlative and reciprocal rights, by which each proprietor of a parcel of land, part of a larger tract under which there was percolating water, would not have the absolute right to withdraw all of such water so as to cut off or greatly diminish the supply of others obtaining water from the same source. And this rule would be of particular application where, as in the *Bower-Moorman* case, the later ''appropriator'' intended to convey the water off the land whence it came, to a distant tract beyond the artesian basin. (*Katz v. Walkinshaw, supra.*)

The principle was further considered and elucidated in *Public Utilities Com. v. Natatorium Co.*, 36 Ida. 287, 211 Pac. 533, 535. The fact that in that case the artesian waters in question were not the subject of a controversy as between rival claimants does not detract from the conviction of the writer of the soundness of the theory of the rights of the owner of property under which percolating waters are found as therein advanced. Firstly, it was said that C. S., sec. 5556, providing that all waters of the state when flowing in their natural channels, including waters of all natural springs and lakes within the boundaries of the state, are declared to be the property of the state, subject to appropriation, does not include percolating waters. Now, as then, ''I am not willing to subscribe to the theory that all waters within the borders of the state, which are found where nature places them, are public waters of the state, the property of the state and solely under the control of the state wherever found. To carry this doctrine to its logical

conclusion, the owner of the fee who sinks a well upon his premises and discovers water has but a qualified ownership in the soil, and a limited right only to the use of the water found therein. Any person may condemn a right of way across the owner of the fee's premises to the well and divert the waters of the well not then being used by the owner of the fee, upon the theory that the water placed there by nature is the property of the state and subject to appropriation, for which the owner of the fee is entitled to no compensation except for the right of way. To hold to such theory is going beyond a safe and reasonable interpretation of the constitutional provisions heretofore cited and falls within no reasonable interpretation of the right to appropriate public waters of the state as fixed by the statutes of this state.''

As said in *King v. Chamberlin,* 20 Ida. 504, 118 Pac. 1099, 1100:

''The constitutional right to divert and appropriate water does not extend to private water.

''Sec. 3, art. 15 of the constitution is dealing with the water of a natural stream and provides, among other things, as follows: 'The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses shall never be denied,' etc. Sec. 3253 of the Rev. Codes (C. S., sec. 5569), which provides for making applications to the state engineer (department of reclamation) for permits to appropriate water, has reference to 'public waters' and 'the waters of any natural stream, spring or seepage waters or lakes, or other public waters.' Neither the statute nor the constitution ever contemplated authorizing one man to appropriate and divert the property of another. Both the constitution and statute were dealing with the public unappropriated waters of the state, as distinguished from private property.''

The opinion of the writer in *Public Utilities Com. v. Natatorium Co., supra,* further states:

"There is a clear distinction between the right to appropriate the waters of a subterranean stream and the right to appropriate percolating waters which form no part of a subterranean stream. *Trustees etc. of the Village of Delhi v. Youmans,* 50 Barb. (N. Y.) ˙316. I do not wish to be understood that the right to appropriate the waters of subterranean streams does not exist in this state, as well as the right to appropriate all waters of natural springs, streams or lakes. My position is that mere percolating waters or waters gathered together in wells upon the lands of the owner of the fee are not subject to appropriation by a third party, either under the constitution or statutes of this state."

Justice William A. Lee was in accord with these views, and the special concurrence of Justice McCarthy lent them support. Justice McCarthy said, in part:

"Article 15 of the constitution must be read as a whole. So reading it I conclude that section 1 thereof applies only to such waters as are public waters, owned by the state of Idaho. Considering article 15 of the above-mentioned statutes, I conclude that the ownership of water by the state, and the resulting right of appropriation, are confined to the waters of natural streams, either surface or subterranean, and do not extend to subterranean springs or percolating water, situated entirely on privately owned land, and not flowing in a natural channel. Water of the latter sort is part of the soil and belongs to the owner of the land." (Citing cases.)

I do not think it a fair interpretation of the statements of Justice McCarthy to say that he thought the principles enunciated by him would be of different application had the waters in controversy in the Natatorium case been shown to be situated underneath the land of more than a single owner and right to their use disputed as between different property owners. He simply adheres to the principle that percolating water, not flowing in a natural channel or being a subterranean stream, is not the subject of appropriation,

owned by or under control of the state, but is considered a part of the soil and belongs to the owner of the land under which it exists.

There appears in this case to be a common supply of water in a state of percolation underlying the lands of each of the parties to the action, and possibly others—not shown to be an underground or subterranean stream. It does not constitute "waters of any natural stream" within the meaning of the Constitution, nor "waters flowing in their natural channels," within the meaning of the statute. Evidently the supply is not sufficient to meet the needs or wants of all, and under the rule of reasonable use, each has a correlative right to the use of the water upon his land to the extent of a reasonable share thereof. There is not in the record sufficient evidence from which can be determined the exact amounts to which each of the parties is entitled. Suffice it to say at this time that the trial court, having decided the issue upon the theory of the superiority of plaintiffs' rights by reason of priority in appropriation, the injunction *pendente lite* was erroneously granted and should be dissolved.