(No. 5651. December 7, 1931.)

FRANCES SILKEY, Respondent, v. H. W. TIEGS, THOMAS F. EDWARDS and J. RYAN, Appellants.

[5 Pac. (2d) 1049.]

T. L. Martin and Wm. M. Morgan, for Appellants.

Edwin Snow, for Respondent.

VARIAN, J.—This case involves the right to the use of artesian hot water developed from wells upon the lands owned by the parties situate in Sections 28 and 29, Twp. 4 N., R. 2 E. B. M., in Ada county, lying on high ground north of the Soldiers' Home near Boise. The location and soil render them chiefly valuable for truck gardening purposes although hay and other crops are also grown thereon. The hot water from the wells is utilized to heat their homes and

hotbeds as well as for irrigating crops. Appellant Tiegs' well is about 155 feet east of respondent's smaller well, which is 16 feet east of her larger well. Appellant Edwards' well is 1644 feet westerly from respondent's larger well and appellant Ryan's well is 1315 feet northerly from appellant Edwards' well, or about 2,950 feet northwesterly from the larger well of Mrs. Silkey, respondent.

This suit was brought by respondent to quiet title to certain waters appropriated by means of two artesian wells bored on her farm, and to enjoin appellants from using their wells in such manner as to deplete the flow in respondent's said wells.

The court found for respondent and among other things:

"That underlying the lands of the parties hereto, all of which lands are in the same immediate vicinity, is a supply of natural warm water forming an artesian basin; that the evidence is insufficient to establish that the water flows in a subterranean stream, and the court accordingly finds that said supply of water is water percolating underground through a stratum of material which stratum is more pervious than the adjacent material, with the result that with such pervious stratum being tapped by the wells of the respective parties hereto, water from such wells flowed and flows freely therefrom in copious streams to the surface of the ground by artesian pressure, and such pervious stratum and the water percolating therein is the common source of supply for each and every of the flowing artesian wells of the parties hereto, which wells are hereinafter more particularly described, such source of supply forming a natural underground artesian reservoir which underlies not all, but a part of the lands of the several parties hereto."

Respondent was decreed a prior right to the use of forty miner's inches of water, with the following priority; as to seven miner's inches from July 1, 1921, and from July 1, 1922, as to thirty-three miner's inches. Appellants were decreed rights to the use of water from their several wells with priorities as follows: Thomas F. Edwards, forty-two miner's inches from November 22, 1926; H. W. Tiegs, forty miner's

inches from March 23, 1927; and J. Ryan, forty miner's inches from September 24, 1927. The decree fixes the duty of water for irrigation purposes at two miner's inches per acre. The following provisions are contained in the decree:

"(1) That the waters herein decreed and allotted are subterranean waters subject to appropriation by the several parties hereto under the laws of the State of Idaho; That the waters flowing from the artesian well of each party is derived from the same source, and the supply of said wells constitutes one interdependent and connected source of supply, and such waters and said wells are hereby drawn within the jurisdiction of this court for distribution for beneficial uses under and pursuant to the terms of this decree.

"(7) The amount of water that may be permitted to flow from the wells of the defendants is hereby provisionally fixed and limited as follows: During the period from October 1st of each year to April 1st of the following year, the defendant Edwards may be permitted to flow from his said well and use for beneficial purposes fifteen miner's inches of water; from April 1st to October 1st of each year, said defendant Edwards may be permitted to flow from his said well and to use for beneficial purposes twenty miner's inches of water, or so much thereof as will not deplete the flow of plaintiff's wells below forty miner's inches. No water shall be permitted to flow or be used from the respective wells of the defendants Tiegs and Ryan, as it is hereby further determined and decreed that until further order of the court, no water can without injury to plaintiff's prior right to the use of said water to the extent herein decreed be permitted to flow or be used from the wells of any of the defendants in excess of the amount herein permitted to be used by the defendant Edwards.

"(8) Each of the parties hereto shall install and maintain suitable and efficient valves, controlling works and measuring devices at their respective wells, all such valves and controlling works to be adequate to entirely shut off said water when required under the terms of this decree and all such

measuring devices to be of such design as to accurately measure the amount of water diverted or flowing. All such controlling works and measuring devices shall at all times be subject to the inspection of any party hereto and of public officials, commissioners or watermasters having jurisdiction over the administration of this decree.

"(10) The enforcement of this decree is committed, in the first instance, pending the creation, as provided by law, by the Commissioner of Reclamation of the State of Idaho, of a water district comprising the source of supply of the water rights herein decreed, to said Commissioner of Reclamation who is hereby appointed a commissioner of this court for that purpose, to serve without compensation, he having consented so to do. Said Commissioner is hereby directed to regulate the flow of the wells of the parties hereto in accordance with the terms hereof and to make from time to time measurements of the flow of the said wells and keep a record thereof, and for this purpose may open and close, regulate and measure the flow of said wells.

"(11) The court retains jurisdiction of this cause for a period of two years from this date to adjust the allowance of water permitted to be used from the wells of the defendants, in case it should hereafter appear from said record of measurements that more or less water than herein provisionally fixed may or should be permitted to flow from the wells of said defendants, or any of them, without infringement of the rights herein decreed in accordance with their respective priorities. The court also retains jurisdiction during said period to correct any clerical error herein, such as land descriptions or the like. The court also retains jurisdiction to make such further orders as may be found necessary to give effect to this decree and to punish the parties hereto, their agents and employees and their grantees and successors in interest for any violation of the provisions hereof. In all other respects, this decree shall be final."

The case was tried by the court without a jury commencing January 6, 1930, and ending January 9, 1930. After decision by the court and before findings were filed, or decree

entered, appellants, on March 5, 1930, moved to reopen the case upon the ground that they had discovered that there was a leak in the Silkey wells whereby a large quantity of the water flowing therein was lost, etc. The motion was renewed on March 29, 1930, based upon certain experiments conducted by appellants after the trial. These motions were submitted upon affidavits and, on June 13, 1930, were denied. The court then filed findings and entered decree herein. Appellants moved for a new trial, which was denied, and they now appeal from the order refusing to reopen the case, the order denying a new trial, and from the decree.

██ Granting or refusing a motion to reopen a case for the purpose of taking further or additional evidence, after it has been submitted for decision, but before entry of judgment, rests in the discretion of the trial judge. (*Froman v. First Nat. Bank*, 35 Ida. 10, 204 Pac. 145; *Parker v. Swett*, 188 Cal. 474, 205 Pac. 1065; *Denman v. Brennamen*, 48 Okl. 566, 149 Pac. 1105, L. R. A. 1915E, 1947; Bowers' Judicial Discretion of Trial Courts, p. 489; 26 R. C. L. 1042.)

The evidence taken at the trial showed that the hot water in controversy here was obtained at a depth of about 1200 feet, but nonflowing cold-water wells were found at a much less depth. The affidavits proffered tended to show that the water in certain shallow wells, bored after the trial, in the vicinity of respondent's wells, was warmer than the cold water wells in the vicinity of approximately the same depth. Appellants argue therefrom that there is a leak in one or both of respondent's wells. The affidavits show the warm condition of the water obtains in a test well bored nearest to one of appellant Tiegs' wells. A counter-affidavit by respondent is to the effect that earlier shallow wells on her property were cold, but that since the boring of the Tiegs' well one cold well lying southwest of said Tiegs well has been lukewarm. After carefully reading the affidavits we are of the opinion that the court did not abuse its discretion in refusing to reopen the case for further testimony. This evidence is far from clear and does not establish appellants' contention that there is a leakage of water from respondent's

wells. Neither did the court err in denying the motion for a new trial.

The vital question raised by this appeal is whether subterranean waters may be appropriated by diversion and beneficial use without compliance with the statute (C. S, sec. 5569, as amended Sess. Laws 1929, chap, 281, p. 675) prescribing the procedure for obtaining a permit from the department of reclamation. Respondent relies entirely upon diversion and application to a beneficial use, having made no attempt to initiate a right under said sections of the statute, while appellants, at the date of the trial, had taken such steps. Their contention is, that subterranean waters can be validly appropriated in no other manner, and that by putting her water to a beneficial use respondent failed to establish a right thereto, or make an appropriation thereof.

The Constitution, art. 15, sec. 3, provides: "The right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied," and that "Priority of appropriation shall give the better right as between those using the water." It nowhere mentions subterranean waters. The legislature, in 1899 (Laws 1899, p. 380), passed an act, embodied in the present code as C. S., sec. 5558, reading: "The right to the use of the waters of rivers, streams, lakes, springs and of subterranean waters, may be acquired by appropriation."

As was said by Mr. Justice Budge (*Bower v. Moorman,* 27 Ida. 162, 180, Ann. Cas. 1917C, 99, 147 Pac. 496), in holding that subterranean waters appropriated by means of artesian wells might be appropriated under this statute:

"In the case of *Le Quime v. Chambers,* 15 Ida. 405, 98 Pac. 415, 21 L. R. A., N. S., 76, the court says in effect that percolating water is subject to appropriation under our statute, and as such will be recognized and protected by the courts."

In the recent case of *Hinton v. Little,* 50 Ida. 371, 296 Pac. 582, involving priorities of artesian water appropriations by diversion and application to a beneficial use, Mr. Justice Givens said:

"We then have a clear statement in *Bower v. Moorman, supra,* to the effect that subterranean waters are the subject of appropriation. That being true, it follows that the judgment herein should be affirmed, since the waters here were appropriated by the respondents prior to the time that the appellants sought to take from their wells the amount of water now claimed by them."

Coming now to the precise question involved, this court held, in cases involving appropriation of surface waters, that the statutory method prescribed by C. S., secs. 5569, 5570, and 5571, was not exclusive, notwithstanding the provisions of C. S., sec. 5568, reading:

"All rights to divert and use the waters of this state for beneficial purposes shall hereafter be acquired and confirmed under the provisions of this chapter. And after the passage of this title all the waters of this state shall be controlled and administered in the manner herein provided."

*Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488, holds, in effect, that diversion and application to a beneficial use is sufficient appropriation. See, also, *Morris v. Bean,* 146 Fed. 423, cited by both appellants and respondent.

It was held by this court, in *Short v. Praisewater,* 35 Ida. 691, 699, 208 Pac. 844, that waters of a spring, situate within the boundaries of a homestead entry, are subject to appropriation for a beneficial use with the consent of the entryman, the appropriation consisting of diversion and application to a beneficial use without attempting to follow the prescribed steps to appropriate water by the statutory method. And in *Youngs v. Regan,* 20 Ida. 275, 118 Pac. 499, involving the right to the use of water from springs and artesian wells, the trial court gave precedence to an appropriation under the statutory permit method (*supra*) over one who had diverted and applied the waters to a beneficial use prior to the application for a permit. This court reversed the decree and held that appellant had made the first appropriation of water from both springs and wells. (*Hinton v. Little, supra.* And in *Bower v. Moorman, supra,* and *Hinton v. Little, supra,* this court applied to appropriation

of subterranean waters the rule promulgated by C. S., sec. 5561, "As between appropriators, the first in time is first in right."

We are constrained to hold, therefore, under the decisions cited, and by analogy to the decisions of this court involving appropriation of surface waters, as distinguished from underground waters, that percolating subterranean waters may be appropriated either by the statutory permit method (C. S., secs. 5569, 5570, 5571) or by actual diversion and application to a beneficial use; and that a valid appropriation first made under either method will have priority over a subsequent valid appropriation, however made. It is apparent that the principal advantage to be gained in pursuing the statutory permit method is that the priority then dates from the date of the permit, while the priority dates from the actual application of the water to a beneficial use in cases where the statutory method is not followed.

Appellants attack the decree as not being supported, in many particulars, by the evidence; that the evidence fails to show that taking water from appellants' wells decreases the flow from respondent's wells; that the evidence does not establish that the water flowing in the hot wells of the parties comes from a common source, etc.; that respondent has not shown a right entitling her to the use of forty miner's inches of water; and that the finding and decree, to the effect that sixty miner's inches is the maximum amount of water that can be diverted from the artesian basin supplying the water to all the wells without depleting the supply available to respondent's well, is not supported. It is sufficient to say that there is ample evidence in the record to sustain all these findings. Appellants particularly criticise the testimony of the engineer, Mr. W. G. Sloan. After this suit was commenced the parties stipulated that certain experiments should be conducted for ascertaining the source of the waters in controversy. Mr. Sloan was selected by the respondent (plaintiff), and Mr. Gordon Smith, a civil engineer, by appellants. They proceeded to make tests and experiments from which certain data was

obtained. This was agreed upon by the engineers and stands undisputed in the evidence. Mr. Sloan, testifying as an expert, was of opinion that the hot water in all the artesian wells of the parties came from the same basin, or source; that fifty to sixty miner's inches of water might be taken from the artesian basin without depleting the flow of respondent's wells, etc. Mr. Smith was not put upon the stand to dispute either the data or conclusions testified to by Mr. Sloan. We are now asked to take the data derived from the experiments of these engineers, assume the role of experts, and draw different conclusions - from the facts than the judge who tried the case. The evidence was suffi- cient to sustain the trial court in his findings and judgment and we will not reverse the case because a different con- clusion might be inferred therefrom by other persons. (*Wooten v. Dahlquist,* 42 Ida. 121, 244 Pac. 407; *Lus v. Pecararo,* 41 Ida. 425, 238 Pac. 1021; *Wolf v. Eagleson,* 29 Ida. 177, 157 Pac. 1122.)

Appellants assign as error what their counsel terms "a seasonal limitation upon the right of appellant, Edwards, to the use of the water," to which he is found entitled as set forth in paragraph seven of the decree, *supra.* The court decreed him forty-two miner's inches of water "for irriga- tion, domestic, stock, and heating purposes." The amount of water that he was permitted to flow from his well was "pro- visionally fixed and limited" as set out in paragraph seven of the decree, *supra.* As argued by respondent, this provision of the decree is clearly in the interest of appellant Edwards. He is permitted to use the excess normal flow from the basin, estimated at from fifteen to twenty inches above the forty miner's inches appropriated by respondent. The testimony indicates that there is more flow during the later period than in the first period mentioned in the decree. It is not an attempt to fix one duty of water for one part of the irriga- tion season and a higher duty for another part, as was the case in *Muir v. Allison,* 33 Ida. 146, 191 Pac. 206, cited by appellants, where the court held that one entitled to a con- tinuous flow of the waters of a stream could not be deprived

of his right thereto by decree without his consent. The purpose of the decree here is to provisionally fix the total amount of water to be taken from respondent's and appellant Edwards' wells. Sixty miner's inches is the amount found by the court to be the normal flow from said basin. In any event this provision is not final and is in effect an administrative one, subject to change by the trial court in case it should later develop that said appellant is entitled to more or less than the amounts so permitted to flow from his well. There is no force in the objection that the decree does not permit appellant Edwards to have any supervision, control over, or right of measurement over respondent's wells. That is a matter to be supervised and controlled by the commissioner of reclamation appointed, as a commissioner to enforce the operation of the decree, by the trial court.

Again, appellants also object to paragraph eight of the decree, *supra,* contending that Ryan and Tiegs are shut off from the use of any water from their wells yet are compelled to install and maintain suitable and sufficient valves, controlling works, and measuring devices at their wells; that said valves and controlling works can be put to no useful purpose and thereby said appellants are deprived of their property without due process of law. Apparently the court intended to permit these parties to have the benefit of any water that might be determined to belong to them in case the operation of the wells under the administrative provisions of the decree should show that both respondent Silkey and appellant Edwards could be supplied to the full extent of their rights leaving a surplus for the later rights. If appellants are satisfied to close and seal their wells entirely, we see no reason why they should not be permitted to do so, and save the expense of installing measuring and controlling devices.

Appellants contend that the decree is in violation of the rights of appellants in that it awards to respondent forty miner's inches, as prior to the rights awarded to appellants, without reference to the quantity of water respondent puts to a beneficial use, and enjoins appellants Tiegs and Ryan

from taking any water from their wells, etc. This contention cannot be sustained since paragraph six of the decree, among other things, provides:

"All rights herein decreed and allotted are decreed for beneficial use only, and none of the parties hereto, their agents or employees, or their successors in interest, shall have the right to permit his said well to flow or to use water therefrom in excess of the amount actually required for beneficial use."

Objection is made that the decree fixes the duty of water at two miner's inches per acre for irrigation purposes, awards respondent forty miner's inches without reference to the number of acres actually irrigated, and without limiting her rights "to take not to exceed two miner's inches per acre for each acre of land actually irrigated." The court found that respondent owned approximately twenty acres of land described in the decree. The decree awards forty miner's inches of water for use upon said land. The general clause (paragraph six) of the decree, quoted above, limits the right to use for irrigation purposes to the amount of water actually required for that purpose and fixes the duty of water at two miner's inches per acre for such purpose. We conclude the decree is sufficiently definite as to the particulars urged.

Appellant urges that the decree is contrary to law in that it awards respondent forty miner's inches of water during the nonirrigation season without finding the amount of water she had put to a beneficial use during that season, or the amount necessary for such use, etc. In finding seven the court finds respondent appropriated, diverted, and applied to a beneficial use in irrigating, domestic, and other beneficial uses, on her lands, the total amount of forty miner's inches of water flowing to the surface from her wells under natural artesian pressure; that she has hot-houses on her land for forcing and starting early fruits and vegetables; that the water is piped through her residence and hot-houses for heating purposes; "and the whole flow of plaintiff's said wells, up to but not exceeding forty miner's inches of water, measured at plaintiff's well, is necessary to plaintiff for the

beneficial uses above recited.'' Considering the facts of this case and the nature of the water right involved, this finding is deemed sufficient to support the award decreed.

Appellants strenuously contend that the court was without power to incorporate in its decree certain administrative provisions (paragraphs eight and ten, *supra*), such as the appointment of the commissioner of reclamation, as a commissioner, to supervise the use of the .water flowing from the wells, take measurements thereof from time to time, and keep a record thereof. They also complain that the court had no authority to retain jurisdiction of the cause for the period of two years for the purpose of adjusting the allowance of water permitted to be used from appellant's wells, etc. (paragraph eleven of the decree, *supra*).

Appellants' contention is that, the legislature having failed to provide by statute for the supervision and control of subterranean waters, the court was without authority to make such provision. It must be conceded that C. S., chap. 219, relating to distribution of water among appropriators, and particularly 'C. S., sec. 5606, therein, placing the immediate direction and control of ''all of the streams to the canals and ditches diverting therefrom'' in the hands of the department of reclamation, does not expressly contemplate its control of subterranean waters not in a defined stream.

The appointment of a commissioner (and we see no reason why the commissioner of reclamation should not act as such), to carry out the administrative provisions of the decree, is necessary under the facts presented by the case at bar. Otherwise respondent, having a prior right to the use of the waters of the artesian basin partly underlying her land and those of appellants, would be without a practical or adequate remedy, since the decree is not self-enforcing. Nor does the fact that the legislature has not legislated on this particular branch of the subject tie the hands of the court here. As was said by Mr. Justice White, in *Montezuma Canal Co. v. Smithville Canal Co.*, 218 U. S. 371, 31 Sup. Ct. 67, 54 L. ed. 1074, 1080 (see 11 Ariz. 99, 89 Pac. 512, for same case below) :

"But because it was within the legislative power to provide administrative machinery to supervise the common use of water in a flowing stream by those having a lawful right to appropriate the water of that stream for beneficial use, it does not result that the decree entered by the court below was in excess of its authority. On the contrary in view of the absence of legislative action on the subject, and of the necessity which manifestly existed for supervising the use of the stream by those having the right to take the water in accordance with the decree which, undoubtedly to that extent, the court was authorized to render, we think the action taken by the court did not transcend the bounds of judicial authority, and therefore is not justly amenable to the attack made upon it."

There being no definite procedure established by statute the court in this equitable suit had inherent power to enforce its decree in its own way. (See *Maloney v. Zipf,* 41 Ida. 30, 237 Pac. 632; *State v. Superior Court,* 101 Wash. 260, 172 Pac. 254.) Retaining jurisdiction of the cause for two years and the administrative provisions of the decree objected to by appellants were all framed for their benefit and were within the powers of a court of equity in the absence of express statutory provisions governing the matter. (*Salt Lake City v. Salt Lake City Water & Electrical Power Co.,* 24 Utah, 249, 67 Pac. 672, 61 L. R. A. 648; *Salt Lake City v. Utah & Salt Lake City Canal Co.,* 43 Utah, 519, 137 Pac. 638; *Heil v. Hubbell,* 80 Colo. 452, 252 Pac. 343; 21 C. J. 692; 2 Wiel on Water Rights in Western States, 3d ed., 1113.)

Finally, it is urged that the decree is inconsistent in its provisions in that it awards appellants Tiegs and Ryan certain amounts of water with priorities dating March 23, 1927, and September 24, 1927, respectively, prohibits them from permitting any water to flow from their wells until further order of the court, and perpetually enjoins them from using the water awarded to them, even though neither respondent nor appellant Edwards is using all, or any part of, the water awarded to them.

Paragraph seven of the decree, *supra,* contains provisional administrative provisions and decrees that no water can, without injury to respondent's prior right, be permitted to flow from the Tiegs and Ryan wells. Paragraph nine enjoins all parties, successors in interest, etc., from any and all use of water from their respective wells except in the manner, to the extent, and for the purposes mentioned in the decree. Having determined that respondent's and appellant Edwards' rights are prior to those of appellants Tiegs and Ryan, and that there is insufficient water to satisfy the prior rights in full, the decree is right and not inconsistent in the particulars named.

The decree may be supplemented by the addition of a clause permitting appellants Tiegs and Ryan to permanently close and seal their hot water wells, in lieu of equipping them with valves, controlling, and measuring devices. When so supplemented the decree to stand affirmed. Cost to respondent.

Lee, C. J., and Budge, Givens and McNaughton, JJ., concur.

Petition for rehearing denied.